Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| Xavier Rosa Rosa<br><br>Recurrido<br><br>vs.<br><br>Gamalier Herrera h/n/c Herrera Eco Electric<br><br>Recurrente | TA2025RA00250 | **REVISIÓN ADMINISTRATIVA** procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2024-0019739<br><br>Sobre: Ley 5 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de noviembre de 2025.

Comparece el señor Gamalier Herrera h/n/c Herrera Eco Electric (Sr. Herrera o recurrente), quien presenta un recurso de revisión administrativa en la cual nos solicita la revocación de la Resolución emitida el 22 de julio de 2025[1], por el Departamento de Asuntos del Consumidor (DACo). Mediante dicha determinación, el DACo declaró Ha Lugar la Querella, instada por el señor Xavier Rosa Rosa (Sr. Rosa Rosa o recurrido), y le ordenó el pago de $10,000.00 por concepto de reemplazo de la instalación de unas baterías defectuosas y que, luego, fueron incautadas por el recurrente.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, confirmamos el dictamen recurrido mediante los fundamentos que expondremos a continuación.

---

[1] Notificada al siguiente día.

## I.

El 6 de octubre de 2024, el Sr. Rosa Rosa presentó una Querella ante el DACo en contra del Sr. Herrera. En la misma adujo que, el 13 de agosto de 2021, el recurrente instaló en su residencia 12 placas solares, 8 baterías marca Victrons y un inversor marca Shneider. Sin embargo, el equipo no funcionó según esperado. A raíz de ello, el recurrido detalló varias instancias en las que se consultó al Sr. Herrera sobre las fallas en el equipo dado a que aún experimentaban pérdida de electricidad. Agregó que, según la factura, tenía una garantía de (1) año por defectos en la instalación con Herrera Eco Electric, el equipo Shneider tenía garantía de (5) años con el fabricante y las baterías Victrons tenían una garantía de (4) años con el distribuidor.

Posteriormente, el recurrente visitó la residencia para evaluar el equipo y tomó la determinación de desinstalarlo para realizar una mejor evaluación. No obstante, señaló que, a la fecha de la vista adjudicativa, las baterías no le han sido devueltas. Añadió que aún continúa realizando los pagos mensuales del costo de la maquinaria. A esos fines, solicitó la remoción de todo el equipo, más la devolución total del pago realizado al recurrente, ascendente a $15, 741.00.

Por su parte, el 15 de octubre de 2024, el recurrente presentó su contestación a la Querella. En esta, argumentó que la garantía por labores de instalación se extendía por el término de (1) año, lo cual venció el 21 de julio de 2022. Indicó que, en la factura se dispone que este no es responsable de cualquier otro daño o defecto que sufriera el equipo. Además, notificó que, dado al uso indebido de las baterías, estas no gozaban de la garantía con el distribuidor. Finalmente, mencionó que el 30 de agosto de 2024 intentó contactar al recurrido y no tuvo éxito. Advirtió que

no se apropió de las baterías, dado a que se encontraban disponibles para ser entregadas al recurrido.

Luego de varios trámites procesales, el 26 de junio de 2025, las partes comparecieron a la vista en su fondo, mediante video conferencia. Posteriormente, tras aquilatar la prueba documental admitida en evidencia y evaluados los testimonios presentados, el 22 de julio de 2025[2], el DACo emitió su Resolución. De la misma surgen las siguientes determinaciones de hecho que se transcriben y adoptan en su totalidad:

*1. El 18 de enero del 2017 el querellante adquirió unas placas solares con la compañía Sunnova con una duración de acuerdo por 25 años con un pago mensual de $130.28, solamente las placas solares.*

*2. A raíz de la necesidad creada por los eventos atmosféricos de ese año, el querellante evaluó varias alternativas para añadir las baterías solares. [P]or lo que contrat[ó] los servicios del Sr. Gamalier Herrera haciendo negocios como Herrera Eco Electric el 21 de julio del 2021.*

*3. Para no incumplir con los acuerdos contratados con la compañía Sunnova, el Sr. Herrera brind[ó] la alternativa de instalar baterías solares de 21 Kilos junto con un inversor marca Schneider.*

*4. El costo de este servicio ascendió a $15,741.00, cuyo pago fue sufragado con un préstamo con la Cooperativa Caribe Federal a nombre de su esposa Aurea George Ríos, tiene un pago mensual de $158.92 por 10 años.*

*5. A la fecha de la vista preliminar el querellante continúa pagando ese préstamo a pesar de no contar con el servicio.*

*6. A la placas y baterías se le otorg[ó] una garantía de 5 años con el fabricante del equipo Schneider y a las baterías marca Victrons de 200 amperes una garantía de 4 años con el distribuidor.*

*7. El 13 de agosto de 2021, el Sr. Gamalier Herrera transport[ó] e instal[ó] las placas y las baterías en la residencia de los querellantes.*

*8. El 23 de agosto de 2021, el querellante hizo una consulta al Sr. Herrera ya que se había ido la luz aproximadamente 3 horas y se le envió evidencia de que las baterías se habían descargado muy rápido. El querellado contest[ó] que todo estaba perfecto, sin hacer inspección presencial.*

*9. En enero de 2022 el equipo emitió ruido que motiv[ó] a contactar al Sr. Herrera para que lo revisara. Este*

---
[2] Notificada al siguiente día.

*efectuó una vista virtual y asever[ó] que todo el equipo estaba funcionando correctamente.*

*10. El 1 de junio de 2024, Aurea George Ríos estuvo en la casa sola y se quedó sin energía eléctrica y cuando verific[ó] las baterías estaban descargadas. Cuando se lo comunicó al querellado no pudo precisar la cantidad de horas que la batería función[ó], pero le pareció muy poco.*

*11. En Julio 2024, se volvió a ir la energía eléctrica y la esposa del querellante pudo tomar el tiempo de la duración de la carga de las baterías que fueron 3 horas. Así que contactó al Sr. Herrera para que viniera a la casa y las revisara y realizara a su vez el mantenimiento requerido.*

*12. El lunes 15 de julio de 2024, el querellado verificó las baterías expresando que todo estaba bien. Cuando Aurea George Ríos insistió en lo contrario, el querellado subió al techo y verificó las placas solares donde identificó un fusible dañado responsable de que 4 placas no funciona[r]an. Cambió el fusible y expres[ó] que todo estaba bien con las baterías aseverando que estaban como nuevas.*

*13. El 13 de agosto de 2024, se fue la energía eléctrica nuevamente toda la noche y el querellante le envió un mensaje informándole al Sr. Herrera sobre lo sucedido. Le notific[ó] que, aunque había apagado todos los aires y equipos de la casa la batería se descargó nuevamente en menos de 3 horas.*

*14. El querellado le expres[ó] "que si le servía de consuelo tenía varios clientes que les había pasado lo mismo y result[ó] ser la poca potencia del sol".*

*15. Luego de varias pruebas que el Sr. Herrera le hizo hacer al querellante, el 18 de agosto de 2024, le expresó por texto que el equipo no servía y que tenía que venir a visitar para inspeccionar.*

*16. El Sr. Herrera fue el 22 de agosto de 2024 y se llevó las baterías confirmando que no funcionaban en su totalidad y expresó que no podía hacer nada y que para resolverle le iba a conseguir unas baterías usadas que durarían un año.*

*17. Hoy en día, el Sr. Herrera, ni ha traído las baterías que se llevó aun estando en garantía, ni les ha remplazado las mismas al querellante.*

*18. El reemplazo de las referidas baterías tiene un costo de $10,000.00.*

*19. La parte querellante solicita que se le devuelva su dinero pues no se le honr[ó] la garantía que se le otorg[ó] a las baterías.*

El DACo determinó que, el Sr. Herrera incumplió con su contrato al instalar unas baterías defectuosas al recurrido. Además, señaló que, el servicio de mantenimiento del recurrente fue casi inexistente y se realizó a insistencias del cliente. Concluyó

que, según la prueba presentada, el Sr. Herrera no cumplió con la garantía establecida en la factura. Por último, ordenó el pago de $10,000.00 para el reemplazo de las baterías defectuosas.

En desacuerdo, el 12 de agosto de 2025, el Sr. Herrera presentó una reconsideración ante la agencia. En la misma, insistió que las baterías tenían una garantía con el distribuidor por un término de (4) años. Resaltó que este visitó la residencia en al menos (4) ocasiones diferentes. Mencionó que el uso indebido prolongado del equipo provocó que se dañaran. Además, indicó que del expediente administrativo surge que el costo de las baterías es $3,768.00.

El 26 de agosto de 2025, el DACo emitió su determinación, mediante la cual denegó la solicitud de reconsideración del recurrente.

Inconforme, el Sr. Herrera presentó el recurso que nos ocupa y le imputó a DACo la comisión de los siguientes errores.

> *(A)   Erró el Departamento de Asuntos del Consumidor al no requerir la presencia de la parte responsable de proveer la garantía y al responsabilizar al recurrente aun cuando su garantía era solamente de un año.*
>
> *(B)    Erró el Departamento de Asuntos del Consumidor al no tomar en consideración los hechos declarados por los propios querellantes recurridos en cuanto a la duración de la garantía del querellado, al uso incorrecto que se dio a las baterías y al concluir que el "reemplazo de las baterías tiene un costo de $10,000.00" sin que exista prueba alguna en el expediente administrativo sobre este particular.*

## II.

## A.

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento

especializado y la experiencia (*expertise*) sobre la materia que su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 436 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. de Corrección y Rehabilitación*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1027 (2020); *Rivera Concepción v. A. R. Pe.*, 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016), el Tribunal Supremo se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> *[L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en*

*evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia** administrativa recurrida. Íd., a la* pág. 628. (Énfasis suplido).

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. Es pertinente enfatizar que la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros*, *supra*, a la pág. 819; *Torres Rivera v. Policía de PR*, *supra*, a la pág. 628.

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. 3 LPRA sec. 9675. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme la siguiente norma:

*El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.* ***Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal,***

*si se basan en evidencia sustancial que obra en el expediente administrativo.*

*Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.* Ley Núm. 38-2017, 3 LPRA sec. 9675. (Énfasis nuestro).

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como, "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota*, 163 DPR 716, 728 (2005); *Misión Ind. P.R.* v. *J.P.*, *supra*, a la pág. 131. Además, dicho Foro ha reiterado que:

> *Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial*, *en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397-398 (1999). (Énfasis suplido).

Por tal razón, la parte que impugna la decisión administrativa tiene el deber de producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador. De forma que éste no pueda concluir que la decisión de la agencia fue justa, porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra,* a la pág. 398; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999).

Dentro del contexto administrativo, se ha denominado parte a aquella persona cuyos derechos y obligaciones pueden verse

afectados adversamente por la acción o inacción de la agencia. *JP. Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 188 (2009). Resulta importante recordar que, las Reglas de Procedimiento Civil no aplican de manera automática en los procesos administrativos. Su uso se limita a que su implementación no resulte contraria a la naturaleza del procedimiento y no sea impedimento a la propiciación de una solución justa, rápida y económica. *Comisionado de Seguros PR v. Integrand*, 173 DPR 900, 928 (2008). Por ende, se debe hacer un balance entre el interés de evitar una demora que perjudique al consumidor y el interés de proteger los derechos de un tercero.

**B.**

El mecanismo de acumulación de parte indispensable está regulado por la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R.16.1, establece que "[l]as personas que tengan un interés común sin cuya presencia no puede adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". El "interés común" al que hace referencia la precitada regla, no se refiere a cualquier interés que una parte pueda tener en el pleito, sino a "un interés real e inmediato, no especulativo ni a futuro, que impida la confección de un remedio adecuado porque podría afectar o destruir radicalmente los derechos de esa parte ausente". *RPR & BJJ, Ex Parte*, 207 DPR 389, 408 (2021).

La doctrina sostiene que una parte indispensable es "aquella persona cuyos derechos e intereses podrían quedar destruidos o inevitablemente afectados por una sentencia dictada, estando esta persona ausente del litigio". J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. JTS, 2000, T. I, pág. 371. En otras palabras, es aquella parte de la cual no se puede prescindir, pues, de lo contrario, las cuestiones litigiosas no

pueden adjudicarse correctamente, ya que su presencia es indispensable para conceder un remedio final y completo sin afectarlo. *López García v. López García*, 200 DPR 50, 63 (2018).

Ahora bien, "[l]a omisión de incluir a una parte indispensable incide sobre el debido proceso de ley que cobija al ausente". *Colón Negrón et al. v. Mun. Bayamón*, 192 DPR 499, 511 (2015). Por tanto, el mecanismo establecido en la Regla 16.1 de Procedimiento Civil, *supra*, parte de dos principios fundamentales: (1) garantizar la protección constitucional de que una persona no sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el decreto judicial emitido sea completo. *López García v. López García, supra*, a la pág. 64.

Es por esto que nuestro Tribunal Supremo ha expresado que, "[a]nte la ausencia de una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia". *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 677-678 (2012). Al incidir tal ausencia sobre la jurisdicción del tribunal, deberá entonces desestimarse la acción. *Íd.*, a la pág. 678. A tenor, la falta de parte indispensable constituye una defensa irrenunciable, la cual puede presentarse en cualquier etapa del litigio, incluso en la apelativa. *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007). En consecuencia, los tribunales apelativos deben levantar *motu proprio* la falta de parte indispensable, debido a que ésta incide sobre su jurisdicción. *Íd.*, a las págs. 223-224. No obstante, dicha desestimación no tiene el efecto de una adjudicación en los méritos ni de cosa juzgada. *Íd.*, a la pág. 224.

Adicionalmente, nuestro Alto Foro ha expresado que la interpretación de la Regla 16.1 de Procedimiento Civil, *supra*, requiere de un enfoque pragmático. *Romero v. S.L.G. Reyes*, 164 DPR 721, 732 (2005). Es decir, su aplicación no depende de una fórmula rígida, sino que "[l]a determinación de si debe acumularse

a una parte en un pleito depende de los hechos específicos de cada caso". *López García v. López García, supra,* a la pág. 65. Por consiguiente, los tribunales tienen el deber de realizar un análisis sobre los derechos de las partes que no estén presentes y de las circunstancias particulares del pleito: el tiempo, el lugar, las alegaciones, la prueba y las clases de derechos e intereses en conflicto. *Colón Negrón et al. v. Mun. Bayamón, supra,* a las págs. 511-512.

**III.**

En el caso ante nos, el recurrente señala que erró el DACo al realizar una determinación ante la falta de una parte indispensable, toda vez que se le indicó al recurrido que las baterías tenían una garantía de (4) años con el distribuidor. Por otro lado, dispuso que hubo una apreciación indebida de la prueba, dado a que en los testimonios vertidos durante la vista adjudicativa se admitió sobre el uso indebido del equipo. Además, la evidencia documental demostró que el valor de las baterías instaladas era de $3,768.00.

Por su parte, el recurrido describió varios incidentes relacionados al pobre mantenimiento del equipo realizado por el Sr. Herrera. Igualmente, adujo que el recurrente removió las baterías del hogar, y al día de la vista adjudicativa, no las ha devuelto. Estableció que el *quantum* de prueba en los procedimientos administrativos es evidencia sustancial y resaltó la deferencia que otorgan los tribunales a las agencias administrativas. Finalmente, argumentó que la adjudicación del caso se apoya en la evidencia que surge del expediente administrativo.

Según la normativa expuesta, las decisiones emitidas por las agencias administrativas están investidas de una presunción de legalidad y corrección. Nuestra revisión judicial se limita a analizar

si la agencia actuó de forma arbitraria, ilegal o tan irrazonable que implique un abuso de discreción. Siendo así, la parte que impugna la decisión administrativa debe producir evidencia de tal magnitud que no se pueda concluir que, la decisión de la agencia no fue justa porque no se apoya en la evidencia que consta en el expediente administrativo.

Del testimonio vertido por las partes surge que, el Sr. Herrera les explicó que el equipo tenía una garantía de (4) a (5) años de reemplazo.[3] Además, incluía el servicio de mantenimiento por una cantidad de tiempo.[4] Relató que notaron un fallo en el equipo y notificaron al recurrente.[5] Describió que el Sr. Herrera se comunicaba mediante video llamada y les indicaba las acciones que debían tomar.[6] Posteriormente, notaron que el sistema continuaba con problemas, por lo que, le solicitaron al Sr. Herrera que acudiera a su hogar para que realizara una inspección.[7] Detalló que, en su visita, el recurrente confirmó que las baterías no funcionaban y procedió a retirarlas del hogar.[8] Finalmente, informó que el Sr. Herrera no se ha comunicado para devolver las baterías.[9]

Por su parte, el recurrente argumentó que le advirtió al Sr. Rosa Rosa que este era un electricista, no un vendedor.[10] Les recomendó que distribuyeran las cargas eléctricas, para evitar el deterioro del equipo.[11] Indicó que, en una ocasión observó que un fusible se desprendió de su lugar, lo cual ocasionó que el mismo se dañara.[12] Arguyó que, el desmedro del equipo se debió a que no siguieron sus recomendaciones sobre la distribución de la carga y

---

[3] Véase SUMAC TA, Entrada 9, a la pág. 7, líneas 19-21.
[4] Véase SUMAC TA, Entrada 9, a la pág. 7, líneas 21-22.
[5] Véase SUMAC TA, Entrada 9, a la pág. 8, líneas 11-13.
[6] Véase SUMAC TA, Entrada 9, a la pág. 8, líneas 13-16.
[7] Véase SUMAC TA, Entrada 9, a la pág. 8, líneas 16-19.
[8] Véase SUMAC TA, Entrada 9, a la pág. 8, líneas 19-22.
[9] Véase SUMAC TA, Entrada 9, a la pág. 10, líneas 4-5.
[10] Véase SUMAC TA, Entrada 9, a la pág. 13, líneas 10-12.
[11] Véase SUMAC TA, Entrada 9, a la pág. 13, líneas 12-15.
[12] Véase SUMAC TA, Entrada 9, a la pág. 15, líneas 8-10.

por el uso indebido del sistema.[13]  Insistió en que no se apropió de las baterías, dado a que tuvo la intención de devolverlas.[14]  Para terminar, manifestó que no le puede ofrecer ningún remedio al recurrido.[15]

En cambio, del testimonio de la Sra. Aurea George Ríos surge que, el recurrente realizó un estudio del consumo de energía de la residencia con los enseres que ahora el Sr. Herrera apunta que son la causa del deterioro de las baterías.[16] Describió que, en varias ocasiones la inspección del sistema se realizaba mediante video llamadas.[17]  Aclaró que, el recurrente descubrió la situación con el fusible luego de que esta insistiera en que revisara el equipo.[18] Ello a pesar de que el Sr. Herrera le había confirmado que la maquinaria estaba funcionando de manera adecuada.[19]

Más aun, de la evidencia documental surge que, alrededor de los 10 días luego de la instalación, el Sr. Rosa Rosa contactó al Sr. Herrera para reportar un fallo en el sistema.  Igualmente, existe evidencia de otras comunicaciones entre las partes en las que se resaltan las preocupaciones del recurrido en cuanto al funcionamiento del artefacto.[20]

Luego de un cuidadoso análisis del expediente ante nuestra consideración, los escritos de las partes y la transcripción de la prueba oral, es forzoso concluir que el DACo no erró en su determinación.  Resulta claro que la decisión de la agencia se basó en el testimonio de las partes y la prueba que obra en el expediente administrativo.  Es decir, la agencia sopesó la prueba que tuvo ante su consideración y le otorgó credibilidad a la versión del recurrido.

---

[13] Véase SUMAC TA, Entrada 9, a la pág. 20, líneas 8-9.
[14] Véase SUMAC TA, Entrada 9, a la pág. 21, línea 8; línea 10.
[15] Véase SUMAC TA, Entrada 9, a la pág. 20, líneas 16-18.
[16] Véase SUMAC TA, Entrada 9, a la pág. 31, líneas 1-5.
[17] Véase SUMAC TA, Entrada 9, a la pág. 32, líneas 6-7.
[18] Véase SUMAC TA, Entrada 9, a la pág. 32, líneas 9-12.
[19] Véase SUMAC TA, Entrada 9, a la pág. 32, líneas 12-14.
[20] Véase SUMAC TA, Entrada 1, a la pág. 43-47.

Reiteramos que, el DACo no cometió los errores señalados en los recursos de epígrafe. Sus determinaciones de hechos están sustentadas por evidencia sustancial y el remedio concedido es procedente en Derecho.  En conclusión, si la parte **recurrente no demuestra la existencia de otra prueba que sirva para demostrar que la actuación de la agencia no está basada en evidencia sustancial o que reduzca el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hechos y no deberá sustituir el criterio de la agencia por el suyo.** *Otero v. Toyota*, 163 DPR 716, 728 (2005). En ausencia de abuso de discreción, arbitrariedad, ilegalidad o actuación irrazonable, no encontramos razón para apartarnos de la norma de deferencia que los tribunales deben conferirle a las determinaciones finales de los foros administrativos. Por tanto, procede que confirmamos el dictamen emitido.

## IV.

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, confirmamos la Resolución emitida por el Departamento de Asuntos del Consumidor.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones